No. 12-57049

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

DOROTHY McKAY, et. al.,

*Plaintiffs-Appellants*,

v.

SHERIFF SANDRA HUTCHENS, et. al.,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
(SACV 12-1458JVS)

**APPELLANTS' REPLY BRIEF**

C. D. Michel (S.B.N. 144258)
Glenn S. McRoberts (S.B.N. 144852)
Sean A. Brady (S.B.N. 262007)
Anna M. Barvir (S.B.N. 268728)
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Tel. No. (562) 216-4444
Fax No: (562) 216-4445
e-mail: cmichel@michellawyers.com

Counsel for Plaintiffs-Appellants

## <u>TABLE OF CONTENTS</u>

PAGE(S)

I.   SHERIFF HUTCHENS FUNDAMENTALLY MISUNDERSTANDS PLAINTIFFS' CLAIM: THAT HER "GOOD CAUSE" POLICY CAUSED PLAINTIFFS' INJURIES BY DENYING THEM THE MEANS TO EXERCISE THEIR SECOND AMENDMENT RIGHT TO BEAR ARMS FOR SELF-DEFENSE. . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   This Case Is About the Right to Bear Arms for Self-Defense, Not the Right to Bear Arms in Any Particular Manner . . . . . . . . 1

    B.   This Case Is About a Single Aspect of the Sheriff's "Good Cause" Policy, Not California's Carry Restrictions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1.   This Case Is Not a Backdoor Attack on State Law . . . . . . . 4

        2.   Statutory Provisions Allowing for Firearms to Be Transported in Public or Kept Within One's Home or Business Are Irrelevant to Plaintiffs' Claims . . . . . . . . . 5

II.  THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO ANSWER THE CONSTITUTIONAL QUESTIONS PRESENTED. . . . . . . . . . 6

III. THE SHERIFF'S POLICY OF DENYING CARRY LICENSES TO LAW-ABIDING ADULTS CANNOT BE RECONCILED WITH THE SELF-DEFENSE BASED RIGHT TO BEAR ARMS RECOGNIZED IN HELLER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.   Sheriff Hutchens Ignores *Heller's* Recognition of A Self-Defense Based Right to Bear Arms Outside the Home.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.   The Sheriff's Narrow Interpretation of *Heller* Is Unsupported by the Authority Cited . . . . . . . . . . . . . . . . . . . . . 9

i

## <u>TABLE OF CONTENTS (CONT.)</u>

PAGE(S)

C.    Recent Circuit Court Authority Confirms a Self-Defense Based Right Arms Outside the Home.. . . . . . . . . . . . . . . . . . . . . 11

IV.  SHERIFF HUTCHENS FAILS TO ESTABLISH WHY PLAINTIFFS' TEXTUAL, HISTORICAL APPROACH OR, IN THE ALTERNATIVE, STRICT SCRUTINY SHOULD NOT BE APPLIED. . . . . . . . . . . . . . . . . . . 13

A.    The Sheriff Neither Rebuts that Plaintiffs' Textual, Historical Approach Applies, Nor Argues that Her Policy Could Meet that Test.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

B.    Restrictions on the Right to Bear Arms Are, at Minimum, Subject to Heightened Scrutiny. . . . . . . . . . . . . . . . . 14

    1.    Strict Scrutiny Is the Appropriate Standard of Review Because the Sheriff's Policy Prohibits Core Second Amendment Conduct.. . . . . . . . . . . . . . . . . . 14

        a.    The Sheriff Misapprehends the Significance of Intermediate Scrutiny in Post-*Heller* Case Law. . . . 14

        b.    *Heller's* "Presumptively Lawful" Language Does Not Preclude Strict Scrutiny. . . . . . . . . . . . . . 15

    2.    Tests that Mandate Rational Basis Review Unless Protected Conduct Is "Substantially Burdened" Ignore *Heller* and the Weight of Post-*Heller* Authority. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.  ONCE THE RIGHT TO BEAR ARMS OUTSIDE THE HOME IS RECOGNIZED, THE SHERIFF'S POLICY NECESSARILY FALLS – UNDER ANY FORM OF HEIGHTENED SCRUTINY. . . . . . . . . . . . . 19

## TABLE OF CONTENTS (CONT.)

PAGE(S)

A.    **Reducing the Number of People Who May Exercise a Fundamental Right Cannot Be a Valid Governmental Interest** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

B.    **Sheriff Hutchens Has Failed to Show How Her "Good Cause" Policy Actually Furthers Any Public Safety Interest** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

C.    **Sheriff Hutchens' "Good Cause" Policy Is Not Sufficiently Tailored to Pass Constitutional Muster** . . . . . . . . . . 23

VI.    **PLAINTIFFS HAVE ESTABLISHED THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR EQUAL PROTECTION CLAIM** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VII.    **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR ALTERNATIVE FACIAL CHALLENGE** . . . . . . . . . . . . . . . . . . . . . . 26

VIII.    **SHERIFF HUTCHENS PROVIDES NO ARGUMENT WHY IRREPARABLE HARM SHOULD NOT BE PRESUMED IF PLAINTIFFS PREVAIL ON THE MERITS** . . . . . . . . . . . . . . . . . . . . . . . 29

IX.    **THE BALANCE OF HARMS AND THE FURTHERANCE OF THE PUBLIC INTEREST COMPELS INJUNCTIVE RELIEF** . . . . . . . . . . . . . . 29

iii

# TABLE OF AUTHORITIES

**PAGE(S)**

## FEDERAL CASES

*Bordenkircher v. Hayes,*
  434 U.S. 357 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Chaplinsky v. New Hampshire,*
  315 U.S. 568 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Coal. Econ. Equity* v. *Wilson,*
  122 F.3d 692, 701 n.9 (9th Cir.  1997). . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ezell v. City of Chicago,*
  651 F.3d 684 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 18

*Freeman v. City of Santa Ana,*
  68 F.3d 1180 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*GeorgiaCarry.org v. Georgia,*
  687 F.3d 1244 (11th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Heller v. District of Columbia,*
  554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Heller v. District of Columbia,*
  670 F.3d 1244 (D.C. Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Int'l Molders'& Allied Workers' Local Union v. Nelson,*
  799 F.2d 547 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Kachalsky v.County of Manchester,*
  817 F. Supp. 2d 235 (S.D.N.Y. 2011).. . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

iv

## TABLE OF AUTHORITIES (CONT.)

PAGE(S)

### FEDERAL CASES

*Kramer v. Union Free School Dist.*,
    395 U.S. 621 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*McDonald v. City of Chicago*,
    __ U. S.__, 130 S. Ct. 3020 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*McMillian v. Monroe County*,
    520 U.S. 781 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Moore v. Madigan*,
    702 F.2d 933 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 11, 12, 13

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Peruta v. County of San Diego*,
    758 F. Supp. 2d 1106 (S.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

*Peterson v. Martinez*,
    No. 11-1149, 2013 WL 646413(10th Cir. Feb. 22, 2013). . . . . . . . . . . . . . 2

*Richards v.County of Yolo*,
    821 F. Supp. 2d 1169 (E.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . 9, 26, 27

*Romer v. Evans*,
    517 U.S. 620 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Rucker v. Davis*,
    237 F.3d 1113 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

# TABLE OF AUTHORITIES (CONT.)

PAGE(S)

## FEDERAL CASES

*Russell v. Gregoire*,
  124 F.3d 1079 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Sammartano v. First Jud. Dist. Court*,
  303 F.3d 959 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Thornton v. City of St. Helens*,
  425 F.3d 1158 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Aguilar*,
  883 F.2d 662 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Booker*,
  644 F.3d 12 (1st Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Chester*,
  628 F.3d 673 (4th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. DeCastro*,
  682 F.3d 160 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Marzzarella*,
  614 F.3d 98 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*United States v. Masciandaro*,
  638 F.3d 458 (4th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*United States v. Miller*,
  604 F. Supp. 2d 1162 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES (CONT.)

PAGE(S)

## FEDERAL CASES

*United States v. Reese*,
   627 F.3d 792 (10th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Salerno*,
   481 U.S. 739 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Williams*,
   616 F.3d 685 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Wash. State Grange v. Wash. State Republican Party*,
   522 U.S. 442 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Woollard v. Sheridan*,
   863 F. Supp. 2d 475 (D. Md. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Zablocki v. Redhail*,
   434 U.S. 374 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## STATE CASES

*Aymette v. State*,
   21 Tenn. 154 (1840). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bliss v. Commonwealth*,
   12 Ky. 90 (1822). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nunn v. State*,
   1 Ga. 243 (1846). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

## TABLE OF AUTHORITIES (CONT.)

**PAGE(S)**

## STATE CASEs (CONT.)

*State v. Chandler*,
    5 La. Ann. 489 (1850). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATUTES, RULES & REGULATIONS

Ark. Code Ann. §§ 5-73-301- 309, -315. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cal. Penal Code § 26160. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Penal Code § 26165. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Kentucky Constitution 1799, art. X, § 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## OTHER AUTHORITY

Eugene Volokh,
    *Implementing the Right to Keep and Bear Arms for Self-Defense*,
    56 UCLA L. Rev. 1443, 1516-18 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 1

John R. Lott, Jr.,
    *More Guns, Less Crime* 177 (3d ed. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 4

John R. Lott, Jr.,
    *What a Balancing Test Will Show for Right-to-Carry Laws*,
    71 Md. L. Rev. 1205, 1206 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Michael P. O'Shea,
    *Modeling the Second Amendment Right to Carry Arms (I):*
    *Judicial Tradition and the Scope of "Bearing Arms" for Self-Defense*,
    61 Am. U. L. Rev. 585, 586 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

I.    **Sheriff Hutchens Fundamentally Misunderstands Plaintiffs' Claim: That Her "Good Cause" Policy Caused Plaintiffs' Injuries By Denying Them the Means to Exercise Their Second Amendment Right to Bear Arms for Self-Defense**

   A.    **This Case Is About the Right to Bear Arms for Self-Defense, Not the Right to Bear Arms in Any Particular Manner**

Sheriff Hutchens continues to insist that Plaintiffs assert a right to bear *concealed* arms, as if they had some choice in the matter. Appellees' Br. 13. The Sheriff views Plaintiffs' claims in a vacuum, ignoring that California law provides no method for being armed in public within Orange County absent a *concealed* Carry License, as Plaintiffs explain. Appellants' Br. 5-7. But, "*Heller* and the 19th-century cases it relied upon instruct that concealed weapons restrictions cannot be viewed in isolation; they must be viewed in the context of the government's overall scheme." *Peruta v. County of San Diego*,758 F. Supp. 2d 1106, 1114 (S.D. Cal. 2010).

*Heller's* discussion of early state cases indicates that governments may regulate the manner of public carry, but not prohibit it. *Heller v. Dist. of Columbia*, 554 U.S. 570, 626 (2008) (citing *State v. Chandler*, 5 La. Ann. 489, 489-90 (1850); *Nunn v. State*, 1 Ga. 243, 251 (1846)); Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense*, 56 UCLA L. Rev. 1443, 1516-18 (2009).

1

Sheriff Hutchens disputes that observation, arguing that "those cases merely suggested that *open* carry was a protected right under the Second Amendment; the cases do not stand for the proposition that there must be a right to carry in public in *some* manner." Appellees' Br. 47. But that notion necessarily implies that States have no discretion in choosing the manner their residents may bear arms, open carry *must* be allowed.

Neither history nor *Heller* support that view. Rather, the state cases cited in *Heller* show that states have discretion to regulate the manner of public carry, but cannot deny the right to carry generally. *See, e.g.*, *Nunn*, 1 Ga. At 251; *see also* CORE Amicus Br. 8; CCJ Amicus Br. 9-10; NRA CRDF Amicus Br. 12. Moreover, adopting the Sheriff's point of view would wreak havoc among the 41 states that have right to carry laws, but often in conjunction with prohibitions on open carry. *See, e.g.*, Ark. Code Ann. §§ 5-73-301- 309, -315 (permitting licenses to carry concealed firearms); Ark. Code Ann. § 5-73-120 (prohibiting open carry of firearms). It is for these reasons Plaintiffs respectfully believe the Tenth Circuit erred in its recent decision in *Peterson v. Martinez*, No. 11-1149, 2013 WL 646413, at * 11 (10th Cir. Feb. 22, 2013), by holding "concealed carrying of firearms falls outside the scope of the Second Amendment's guarantee . . .." In short, taking away the state's discretion to choose the manner of carry is not

2

supported by text, history, or our current traditions. Nor does it make any sense.

**B.  This Case Is About a Single Aspect of the Sheriff's "Good Cause" Policy, Not California's Carry Restrictions**

The sole impediment to Plaintiffs obtaining the license California requires to publicly carry arms for self-defense in Orange County is Sheriff Hutchens' policy that rejects self-defense as "good cause" for that license. As Sheriff Hutchens concedes, California case law has already construed its "good cause" provision as affording her the discretion in deciding what constitutes "good cause." Appellees' Br. 4-5 (citing cases). The State requires only that Sheriff Hutchens put her "good cause" policy in writing. Cal. Penal Code § 26160 (Addend. 34). It does not mandate a particular policy. Thus, the Sheriff has discretion in fashioning the policy, subject only to her duty to do so in a manner consistent with constitutional principles. *Cf. Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) ("And broad though that discretion may be, there are undoubtedly constitutional limits upon its exercise.")

In short, it is undeniable that the Sheriff's policy of refusing to accept "self-defense" as "good cause" for exercising the right to bear arms is the cause of Plaintiffs' injury. As such, it is that aspect of her chosen policy alone from which Plaintiffs seek relief.

3

### 1.    This Case Is Not a Backdoor Attack on State Law

Sheriff Hutchens misconstrues Plaintiffs' claims as attacks on California's statutes prohibiting the carrying of concealed and loaded firearms. Appellees' Br. 13. The Sheriff's assertion is baseless. While Plaintiffs do challenge a provision of state law in the alternative (discussed below in Section VII), the relief they seek for *any* of their claims would leave California's carry restrictions untouched. Those without a Carry License – which would be the overwhelming majority of people even if self-defense were recognized as "good cause"[1] – would still be barred from carrying firearms in public. And even people with a Carry License would be subject to other traditional restrictions, such as those prohibiting carrying arms in "sensitive places" like courtrooms. *Heller*, 554 U.S. at 626.

Moreover, Plaintiffs do not challenge California's licensing authority, generally, or its requirement that persons be of "good moral character" and pass a 16-hour firearm training course in order to qualify for a Carry License. Cal. Penal Code §§ 26150(a)(1) (Addend. 33), 26165 (Addend. 35). Plaintiffs do not even dispute California's requiring "good cause" for a Carry License. The only dispute here is over that single aspect of Sheriff Hutchens' "good cause" policy that requires some extraordinary need for self-defense to qualify for a Carry License.

---

[1]    *See* John Lott, *More Guns, Less Crime* 177 (3d ed. 2010).

4

No other fundamental, enumerated right is subject to such a precondition.

### 2.    Statutory Provisions Allowing for Firearms to Be Transported in Public or Kept Within One's Home or Business Are Irrelevant to Plaintiffs' Claims

As purported examples of viable alternatives to a Carry License, Sheriff Hutchens lists various California Code sections that allow one to transport *unloaded* handguns *in a locked container* to and from shooting ranges, gun smiths, hunting areas, and other specific locations, or that allow having a loaded handgun on one's private property, such as within one's home or business. Appellees' Br. 47. But those sections have nothing to do with Plaintiffs' claims seeking to vindicate their right to be "armed and ready" to engage in self-defense in public.

Thus, the Sheriff's attempt to redefine the issues presented by Plaintiffs' claims as outlined in their opening brief should be rejected. Once it is understood that this case is about the right to obtain the license the legislature requires to bear arms for self-defense, and that but for a single aspect of Sheriff Hutchens' "good cause" policy – one that rejects self-defense as "good cause" for a Carry License – Plaintiffs would have been issued such licenses, the questions presented become clear and the answers apparent: (1) Is there a right to bear arms for self-defense outside the home; and (2) if so, can a local Sheriff impose a policy that prohibits the exercise of that right if one cannot demonstrate an extraordinary need for self-

5

defense? If the answer to the first question is "yes," and Plaintiffs contend it must be if one takes the Second Amendment – and *Heller* – seriously, then the answer to the second question must be "no."

## II.   THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO ANSWER THE CONSTITUTIONAL QUESTIONS PRESENTED

Plaintiffs contend that the district court declined to answer the constitutional questions before it. Appellants' Br. 18-19. Sheriff Hutchens disagrees, insisting that the court adopted the reasoning of other district courts and definitively ruled that her policy does not infringe on Plaintiffs' rights as a matter of law. Appellees' Br. 18. This is a distinction without a difference – either interpretation constitutes an abuse of discretion because a district court never has discretion to apply the wrong legal standard. *Rucker v. Davis*, 237 F.3d 1113, 1118 (9th Cir. 2001) (en banc).[2]

Insofar as a denial of a request for preliminary injunction by the district court rests on a premise as to the pertinent rule of law, that premise is reviewable fully and de novo in the appellate court. *Russell v. Gregoire*, 124 F.3d 1079, 1083

_____

[2]   Sheriff Hutchens claims that the district court did not abuse its discretion because reliance on the "prevailing judicial interpretations of the scope of the Second Amendment . . . was not illogical, implausible, or without support." Appellees' Br. 18. But that reading conflates the standard for reviewing the lower court's choice of applicable law (i.e., de novo) with the standard for reviewing the application of law to facts (i.e., abuse of discretion).

6

(9th Cir. 1997); *see also Int'l Molders' & Allied Workers' Local Union v. Nelson*, 799 F.2d 547, 550 n.1 (9th Cir. 1986) (if the court "applied incorrect substantive law," its ruling denying preliminary relief must be reversed). "Where the issue is whether the district court got the law right in the first place," this Court does "not defer review and thereby allow lawsuits to proceed on potentially erroneous legal premises." *Coal. Econ. Equity* v. *Wilson*, 122 F.3d 692, 701 n.9 (9th Cir. 1997).

Here, the district court abused its discretion in applying improper substantive law to the underlying legal questions. *See* E.R. I 004; E.R. II 037-24, 211-229. And because Sheriff Hutchens agrees that no material facts are in dispute, Appellees' Br. 17, resolution of the ultimate issues necessarily follows application of the proper rule of law. This Court should thus rule on the merits.

## III.    THE SHERIFF'S POLICY OF DENYING CARRY LICENSES TO LAW-ABIDING ADULTS CANNOT BE RECONCILED WITH THE SELF-DEFENSE BASED RIGHT TO BEAR ARMS RECOGNIZED IN *HELLER*

### A.    Sheriff Hutchens Ignores *Heller's* Recognition of A Self-Defense Based Right to Bear Arms Outside the Home

The Sheriff's analysis, like that of the district court's, ignores the Supreme Court's finding that the Second Amendment protects an individual, self-defense based right to bear arms. The Sheriff and the district court both disregard the exhaustive analysis in *Heller* about the self-defense nature and scope of Second

Amendment rights – an analysis that barely mentions "the home," and never in a limiting manner.[3] That analysis led to the *initial* holding in *Heller* that the right to arms is an individual, not a collective, right, after which the Court applied that right to the particular facts in Mr. Heller's case. Thus, the Court's findings and description of the rights protected by the Second Amendment are not mere dicta, they were essential to the disposition of the case and are binding on lower courts. The district court's failure to recognize and apply those findings in the instant case was error. As Judge Posner observed, while there may be some debate about the historical analysis and findings in *Heller*, that debate ended – at least for lower courts – with the majority's decision. *Moore v. Madigan*, 702 F.2d 933, 935 (7th Cir. 2012).

The Court confirmed that its findings on the nature and scope of the fundamental, self-defense based right to arms were binding in *McDonald*. *Heller*, 554 U.S. at 3059. *Heller* also held that the right to bear arms includes a right to "possess and carry weapons in case of confrontation," *id.* at 592, and to be "armed

---

[3] Indeed, in its nearly 50-page analysis of the nature and scope of the Second Amendment right (as opposed to its application of that right to the challenge at hand), the Court referred to the "home" or "homestead" a grand total of three times, in each instance quoting a historical source that recognized a right to keep and bear arms to defend both one's home and one's person and family. *See Heller*, 554 U.S. at 615-16, 625.

8

and ready" to use them in "case of conflict" with another. *Id.* at 584. *Heller's* findings are now Second Amendment law, law that the district court failed to recognize or apply. And the Sheriff's attempt to rehabilitate the district court's flawed analysis by noting that it is in keeping with a few similarly flawed district court opinions is unavailing. Appellees' Br. 29 (citing *Peruta v. County of San Diego*, 758 F. Supp. 2d 1106, 1110 (S.D. Cal. 2010); *Richards v.County of Yolo*, 821 F. Supp. 2d 1169, 1174-1175 (E.D. Cal. 2011).The district court merely cited those cases and, without independent analysis, adopted their erroneous conclusions. Appellees' Br. 29-31; E.R. I 001-05.

### B.  The Sheriff's Narrow Interpretation of *Heller* Is Unsupported by the Authority Cited

The Sheriff claims that *Heller*, itself, limits the right to bear arms for self-defense to the home, and that the Ninth Circuit has "confirmed" that limitation:

> The prevailing judicial interpretation of the scope of the Second Amendment right after *Heller* – including that of the Ninth Circuit Court of Appeals – recognizes the limited scope of the Second Amendment right and confirms that *Heller* limits the core Second Amendment right to the right to bear arms for self-defense in the home.

Appellees' Br. at 22.

That remarkable assertion is followed by a string cite to cases, none of which stands for that particular proposition. *Heller* does not explicitly or implicitly

9

limit the right to bear arms for self-defense to the home, nor has the Ninth Circuit confirmed such a premise. And the legal authority cited is unpersuasive, at best. For example, the Sheriff cites an Illinois state case saying only that it will not extend the holding in *Heller* beyond the home without further guidance – that is a far cry from supporting a "prevailing judicial interpretation" confirming that *Heller*, itself, limits the right to the home. Additionally, more recent Illinois *federal Circuit Court* cases have held just the opposite. *Moore*, 702 F.3d at 942 ("The Supreme Court has decided that the amendment confers a right to bear arms for self-defense, which is as important outside the home as inside."); *see also Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011).

Judge Posner's position in *Moore is* supported by *Heller* and *McDonald*, both of which make it clear that it is the right to be armed and ready for self-defense that is central to the Second Amendment, not the location that the right is exercised. *See also* NRA CRDF Amicus Br. at 8; CORE Amicus Br. at 8-9. Even the case the Sheriff most relies upon recognizes the right to bear arms in public for self-defense. *See Kachalsky v.County of Manchester*, 817 F. Supp. 2d 235, 262-63 (S.D.N.Y. 2011).

In sum, Plaintiffs have shown the Supreme Court recognizes the right to bear arms for self-defense outside the home. And Sheriff Hutchens' authority to

10

the contrary is unpersuasive; even the latest (and only) circuit opinion upholding a good cause-type provision concedes the point. The most recent circuit court opinion on right to carry laws is unequivocal on the matter, finding the right to armed self-defense just as important outside the home as inside. *Moore*, 702 F.3d at 963.

### C.     Recent Circuit Court Authority Confirms a Self-Defense Based Right Arms Outside the Home

While the *Kachalsky* court grudgingly conceded that history supports *some* right to bear arms in public, it afforded the right little weight, so little that it upheld a policy that effectively banning the right to arms outside the home. 817 F. Supp. 2d at 270-71. In stark contrast, the court in *Moore* struck down a ban on public carry, finding the right to bear arms in self-defense equally – if not more – important outside the home than inside. 702 F. 3d at 942 (7th Cir.  2012).

These cases reflect two different traditions developed over the past 190 years of state court precedent regarding the right to bear arms: "a defense-based right, under which courts construe the right to bear arms as protecting a meaningful right to carry handguns for self-protection, and a 'hybrid' or civic-based right, under which gun possession is protected, but the courts do not view self-defense as a central purpose of the right, and therefore uphold broader

11

restrictions on weapons carrying." *See* Michael P. O'Shea, *Modeling the Second Amendment Right to Carry Arms (I): Judicial Tradition and the Scope of "Bearing Arms" for Self-Defense*, 61 Am. U. L. Rev. 585, 586 (2012).

The *Kachalsky* court relies on *Aymette v. State*, 21 Tenn. 154 (1840), *distinguished by Heller*, 554 U.S. at 613, 623. *Aymette* is the first in a line of cases viewing the right to arms as a civic-based right, and affording little protection to the right to bear outside the home for self-defense. O'Shea, *supra* at 632. *Moore*, on the other hand, followed the tradition of the first published appellate decision on the right to arms, *Bliss v. Commonwealth*, 12 Ky. 90 (1822), *cited in Heller*, 554 U.S. at 585 n.9. *Bliss* represents the self-defense based tradition. O'Shea, *supra*, at 624. The court in *Bliss* struck down a state statute that prohibited the concealed carrying of weapons, holding that it violated the "right of the citizens to bear arms in defense of themselves and the state" as recognized in the Kentucky Constitution. 12 Ky. at 91; accord id at 93; *see* Ky. Const. of 1799, art. X, § 23 ("[T]he rights of the citizens to bear arms in defense of themselves and the State shall not be questioned.").

As Professor O'Shea explains, *Heller* and *McDonald* embraced the self-defense based tradition. He concludes: "Once lower courts and scholars look to the correct line of precedent, they will find powerful arguments that the Second

12

Amendment's scope includes a right of individuals to carry handguns in public for self-defense." *O'Shea*, *supra*, at 586. In terms of these recent cases out of the Second and Seventh Circuits, *O'Shea* suggests that *Moore* got it right. Or as Judge Posner observed,

> We are disinclined to engage in another round of historical analysis to determine whether eighteenth-century America understood the Second Amendment to include a right to bear guns outside the home. The Supreme Court has decided that the amendment confers a right to bear arms for self-defense, which is as important outside the home as inside.

*Moore*, 702 F. 3d at 942.

## IV. SHERIFF HUTCHENS FAILS TO ESTABLISH WHY PLAINTIFFS' TEXTUAL, HISTORICAL APPROACH OR, IN THE ALTERNATIVE, STRICT SCRUTINY SHOULD NOT BE APPLIED

### A. The Sheriff Neither Rebuts that Plaintiffs' Textual, Historical Approach Applies, Nor Argues that Her Policy Could Meet that Test

Sheriff Hutchens does not endeavor to explain why the textual, historical approach to reviewing this case advanced by Plaintiffs is not appropriate. Neither rebutting that the textual, historical test must apply, nor providing any evidence that her policy of requiring one to prove a specific need for a Carry License can survive that test (or controverting Plaintiffs' evidence), Plaintiffs necessarily prevail.

Instead, the Sheriff advances a two-step approach that asks whether the

13

challenged law burdens conduct that falls within the scope of the right, as historically understood and, if it does, applies a means-end test based on the severity of the burden on the right. Appellees' Br. 19-20. Neither *Heller* nor *McDonald* support adoption of such an approach, and this Court should reject the invitation to apply it here. Appellants' Br. 29-31.

### B. Restrictions on the Right to Bear Arms Are, at Minimum, Subject to Heightened Scrutiny

#### 1. Strict Scrutiny Is the Appropriate Standard of Review Because the Sheriff's Policy Prohibits Core Second Amendment Conduct

Sheriff Hutchens provides no legitimate basis to depart from the general rule that restrictions on core areas of fundamental rights require strict scrutiny. Neither post-*Heller* cases applying less than strict scrutiny, nor *Heller's* "presumptively lawful" dictum preclude the application of strict scrutiny in cases challenging a restriction on the core right to bear arms for self-defense.

##### a. The Sheriff Misapprehends the Significance of Intermediate Scrutiny in Post-*Heller* Case Law

Nearly all circuits to decide the issue have applied heightened scrutiny whenever conduct within the scope of the Second Amendment is regulated. That many post-*Heller* cases have stopped just shy of strict scrutiny does not cast doubt on the propriety of that test here. Unlike this case, courts that have departed from

14

the general rule of applying strict scrutiny to restrictions on fundamental rights have done so in cases involving conduct *outside* the Second Amendment's core.[4]

The implication is that restrictions that *do* touch upon the core right of law-abiding adults to keep and bear arms for self-defense require the most exacting review. The fundamental nature of the right to armed self-defense does not change based on where one is attacked, and neither should the level of scrutiny applied to laws restricting that right. That is not how other fundamental rights operate. Like the First Amendment right to engage in political speech, the Second Amendment right to carry arms for self-defense purposes involves conduct at the very core of a fundamental, enumerated right. *Heller*, 554 U.S. at 592; *McDonald v. City of Chicago*, __ U.S. __, 130 S. Ct. 3020, 3036 (2010) (quoting *Heller*, 554 U.S. at 628). And, like the First Amendment right to engage in political speech, it requires strict scrutiny review, whether being exercised in private or in public. That the Constitution might tolerate more regulation (but not prohibition) of the public activity does not change this.

---

[4] *See, e.g.*, *Booker*, 644 F.3d 12, 25 (1st Cir. 2011) (possession by violent misdemeanant); *Masciandaro*, 638 F.3d at 471 (possession of loaded firearms in vehicle within sensitive public places); *Reese*, 627 F.3d at 802 (possession while subject to a domestic violence protective order); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010) (possession by felons); *Marzzarella*, 614 F.3d at 98 (possession of firearms with obliterated serial numbers).

15

b.   *Heller's* "Presumptively Lawful" Language Does Not Preclude Strict Scrutiny

Sheriff Hutchens suggests that a footnote in *Heller* that lists "presumptively lawful" regulatory measures serves as the Court's implicit rejection of strict scrutiny. Appellees' Br. 37 (citing *Heller*, 554 U.S. at 626-27, n.26). Such a reading of that dictum makes little sense.[5]

In its Second Amendment cases, the Supreme Court frequently cites the First Amendment as a helpful analog. *See Heller*, U.S. at 635; *see also McDonald*, 130 S. Ct. at 3040, 3050. And, notably, the First Amendment coexists with several unprotected categories of speech like obscenity, fighting words, and defamation. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942). That regulations on those narrow categories of speech have not been "thought to raise any Constitutional problem," *id.* at 572, has no effect on the standard of review applied to laws regulating core First Amendment conduct, i.e., strict scrutiny.

Similarly, even if the Court's "presumptively lawful" language is read as a list of exceptions to the Second Amendment, it says little, if anything, about the level of scrutiny that must be applied to laws, like the Sheriff's policy, that restrict

---

[5]  Indeed, the previous footnote admonishes: "It is *inconceivable* that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a *footnoted dictum* in a case where the point was not at issue and was not argued." *Heller*, U.S. at 625 n.25.

16

the core right of law-abiding citizens to keep and bear arms for self-defense.  Far

from being an implicit rejection of strict scrutiny, the "presumptively lawful"

dictum just as reasonably serves as a predictive judgment about which regulations,

while subject to strict scrutiny, are likely to survive judicial review.

> ### 2.  Tests that Mandate Rational Basis Review Unless Protected Conduct Is "Substantially Burdened" Ignore *Heller* and the Weight of Post-*Heller* Authority

Sheriff Hutchens relies on the vacated *Nordyke V* decision, two district

court decisions, and California state authority to argue that "only regulations

which substantially burden the right to keep and bear arms trigger heightened

scrutiny and where no such substantial burden is imposed, rational basis review

will apply." Appellees' Br. 32.[6] But she fails to address how these decisions,

which effectively treat rational basis as the default standard, can coexist with the

*Supreme Court's* clear instruction that the explicit nature of the right to arms

---

[6]  Citing no authority, Sheriff Hutchens claims that "*numerous* federal circuit courts *post-Heller* have determined that *only* regulations that substantially burden the core right to keep and bear arms trigger heightened scrutiny." Appellee's Br. 31. The Sheriff is mistaken.

In fact, a "substantial burden" analysis has been strictly followed only by the Second Circuit in *United States v. DeCastro*, 682 F.3d 160 (2d Cir. 2012), and to a lesser extent, by the Ninth Circuit in the vacated *Nordyke V* case. Contrary to the Sheriff's claims, no other circuit court imposes a "substantial burden" threshold just to trigger heightened scrutiny. *See* Appellees' Br. 31.

*precludes* application of rational basis to laws that impose more than a de minimis burden on protected conduct. Appellants' Br. 32-33.

Perhaps more telling, the Sheriff does not address the great weight of circuit court authority recognizing the importance of that admonition and invariably applying heightened scrutiny to any law directly regulating conduct within the scope of the right. *See* Appellees' Br. 31-33; *but see, e.g.*, *GeorgiaCarry.org v. Georgia*, 687 F.3d 1244, 1260 n.34 (11th Cir. 2012); *Heller v. District of Columbia*, 670 F.3d 1244, 1252 (D.C. Cir. 2011) ("*Heller II*"); *Ezell*, 651 F.3d at 706; *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v. Masciandaro*, 638 F.3d 458, 469, 471 (4th Cir. 2011); *United States v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010); *Marzzarella*, 614 F.3d at 94-95.

Any test that would mandate rational basis review is contrary to *Heller* and the weight of post-*Heller* authority. Appellants' Br. 35-37. To the extent the analysis excludes from heightened scrutiny all burdens falling somewhere between incidental and substantial, the "substantial burden" test is an improper approach to Second Amendment challenges. *Compare Decastro*, 682 F.3d at 164 (applying mere rational basis review to all burdens on the Second Amendment until they are deemed "substantial"), *with Heller II*, 670 F.3d at 1255-56 (recognizing that, while a de minimis burden might not warrant heightened scrutiny, *Heller* clearly

18

"reject[s] any kind of 'rational basis' " test for evaluating laws directly regulating Second Amendment conduct).

But, even if the Court is inclined to apply a substantial burden test, the Sheriff's policy must be subject to heightened scrutiny. The challenged policy effectively prohibits Plaintiffs from exercising their core right to bear arms. Plaintiffs are hard pressed to find a more substantial burden on their right to bear arms.

## V.    ONCE THE RIGHT TO BEAR ARMS OUTSIDE THE HOME IS RECOGNIZED, THE SHERIFF'S POLICY NECESSARILY FALLS – UNDER ANY FORM OF HEIGHTENED SCRUTINY

Regardless of what heightened standard of review applies, the Sheriff has not met and cannot meet her burden. In effect, the Sheriff's policy is a ban on the exercise of the right to bear arms for most law-abiding adults, including Plaintiffs. As such, this Court need not even decide the proper standard of review here because, as in *Heller*, the policy clearly could not pass muster under any heightened standard.

Sheriff Hutchens disagrees, contending that her policy survives any standard of review, "even strict scrutiny." Appellees' Br. 38. The interest she claimed to be furthered is protecting the public "from violent crime and the risks that arise from widespread and unchecked public carry of concealed and loaded

19

firearms." Appellees' Br. 38. Plaintiffs do not dispute that such an interest is compelling. The pages of ink the Sheriff spills in its defense are therefore superfluous and do not warrant a response. *See* Appellees' Br. 38-42. Plaintiffs do dispute, however, the legitimacy of the admitted purpose and effect of Sheriff Hutchens' "good cause" policy of requiring people to show they have a special need for a Carry License, i.e., to limit the number of people with Carry Licenses.

## A.    Reducing the Number of People Who May Exercise a Fundamental Right Cannot Be a Valid Governmental Interest

There is no dispute that Sheriff Hutchens' policy is intended to and does deny most law-abiding adults, including Plaintiffs, the license required to exercise their constitutional right to bear arms for self-defense.  E.R. II 101-04. By intentionally limiting the number of people who may obtain a Carry License, Sheriff Hutchens seeks to declare the right to bear arms itself harmful to public safety, thereby bootstrapping the subversion of a constitutional right into a compelling public safety interest. This she cannot do.

As explained by the *Woollard* court, even when applying the incorrect "intermediate scrutiny" standard:

> A law that burdens the exercise of an enumerated constitutional
> right by simply making that right more difficult to exercise cannot be
> considered 'reasonably adapted' to a government interest, no matter how
> substantial that interest may be. Maryland's goal of 'minimizing the

20

proliferation of handguns among those who do not have a demonstrated need for them,' is not a permissible method of preventing crime or ensuring public safety; it burdens the right too broadly.

*Woollard v. Sheridan*, 863 F. Supp. 2d 475, 475 (D. M d. 2012).

More importantly, the Sheriff's explanation that limiting the number of people with Carry Licenses "prevents the carrying of firearms 'just in case,' " Appellees' Br. 43, is in direct conflict with the right articulated by the *Heller* court, i.e., "to be armed and ready" in case of confrontation, *see* 554 U.S. at 592. That right is, by definition, to have a firearm "just in case." Therefore, the Sheriff's goal of limiting the number of licensees via her restrictive "good cause" policy is not a legitimate one, and it is fatal to that policy's validity.

In any event, the Sheriff's policy fails to advance her asserted interest, nor is it sufficiently tailored to do so.

### B.    Sheriff Hutchens Has Failed to Show How Her "Good Cause" Policy Actually Furthers Any Public Safety Interest

Concerns about license-holders committing crimes or accidents has been repudiated, repeatedly. Empirical evidence gathered over many years shows such public safety concerns are unfounded. While gun crime is a serious problem, issuing Carry Licenses to law-abiding adults does not exacerbate it and, in fact, may reduce crime. A recently published law review article, examining whether

21

restricting law-abiding individuals' access to Carry Licenses furthers the government's public safety interest, finds overwhelmingly that it does not:

> There have been a total of 29 peer reviewed studies by economists and criminologists, 18 supporting the hypothesis that shall-issue laws reduce crime, 10 not finding any significant effect on crime, including the NRC report, and [Aneja, Donohue, and Zhang]'s paper, using a different model and different data, finding that right-to-carry laws temporarily increase one type of violent crime, aggravated assaults.

John R. Lott, Jr., *What a Balancing Test Will Show for Right-to-Carry Laws*, 71 Md. L. Rev. 1205, 1206 (2012). Based on extensive research on the issue, the article concludes that:

> If right-to-carry laws either reduce crime or leave it unchanged and if no one argues that they lead to more accidental gun deaths or suicides, regulations prohibiting people from carrying concealed handguns cannot withstand either strict or intermediate scrutiny.

*Id.*

Sheriff Hutchens implores the Court to ignore Mr. Lott's findings, due to his "lack of credibility," and to instead heed the dire predictions of Professor Zimring about what will happen if more people are issued licenses. But speculation is no longer necessary. As amici note, 41 states have Carry License issuance policies similar to that which Plaintiffs seek. And two in the Ninth Circuit, Alaska and Arizona, that do not even require a license. *See* ILEETA

Amicus Br. 1; Amicus Br. of Gun Owners of California and Senator H.L

Richardson 9. Surely, if violence from licensees was such a real threat, the Sheriff

or Professor Zimring could have provided evidence of such from among the 8

million or so licensees in those states. ILEETA Amicus Br. at 12. The truth is the

predictions about violence resulting from liberalized Carry License issuance have

never materialized. *Id*. at 5-6.

### C.    Sheriff Hutchens' "Good Cause" Policy Is Not Sufficiently Tailored to Pass Constitutional Muster

Even if reducing the number of Carry Licenses issued was a legitimate

means of advancing the government's public safety interest and actually furthered

that interest, Sheriff Hutchens fails to explain how requiring people to prove they

have a special need to exercise their right to bear arms before they may do so is

sufficiently tailored to meet constitutional scrutiny. Instead, relying on *United

States v. Miller*, 604 F. Supp., 1162, 2d 1172  n.13. (2009), she contends that a

narrowly tailored policy is not required because it is impracticable. Appellees' Br.

46. But that case concerned a challenge to the general prohibition on *felons*

possessing firearms, not on Carry License restrictions.

Thus, the Sheriff fails to meet her burden to justify her policy under

intermediate, let alone strict scrutiny on multiple grounds.

23

## VI.  PLAINTIFFS HAVE ESTABLISHED THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR EQUAL PROTECTION CLAIM

Sheriff Hutchens correctly notes that courts should generally uphold a legislative classification so long as it "neither burdens a fundamental right nor targets a suspect class." Appellees' Br. 52 (citing *Romer v. Evans*, 517 U.S. 620, 631 (1996)). However, she incorrectly relies on *Thornton v. City of St. Helens*, 425 F.3d 1158 (9th Cir. 2005) for the proposition that Plaintiffs must (and cannot) prove that they are similarly situated to persons with a specific threat against them who qualify for a carry license under the Sheriff's policy.[7] *See* Appellees' Br. 51-52.

The plaintiffs in *Thornton* brought an equal protection challenge against a city, alleging it conspired to deny them a business permit because one plaintiff was a Native American. In ruling for the city, the court explained that the plaintiffs had not offered any evidence of racial discrimination. *Thornton*, 42 F.3d at 1167. Hence *Thornton* requires one alleging discrimination based on membership in a suspect class to prove that was indeed the basis in order to prevail under equal protection.

---

[7] Sheriff Hutchens' reliance on *United States v. Aguilar*, 883 F.2d 662, 706 (9th Cir. 1989), and *Freeman v. City of Santa Ana*, 68 F.3d 1180 (9th Cir. 1995), is also misplaced as these cases deal with selective prosecution and enforcement of valid laws; Appellants claim that her policy is itself invalid.

24

Unlike a claim involving a suspect class, a claim that a law violates equal protection because it burdens a fundamental right does not require the Court to determine whether any two classes are "similarly situated." *See Zablocki v. Redhail*, 434 U.S. 374 (1978); *Kramer v. Union Free School Dist.*, 395 U.S. 621 (1969). In *Kramer*, the Supreme Court struck down a law limiting the right to vote in school district elections to property owners and parents of school children, finding the classification failed to survive strict scrutiny. 395 U.S. at 626-29. The court explained, where fundamental rights are concerned, the issue is not whether the legislative judgment and resulting classification had some basis, but whether the distinctions "do in fact sufficiently further a compelling state interest to justify denying the franchise to appellant and members of his class." *Id.* at 633.

The question thus before this Court is not whether those Carry License applicants who can prove a specific threat against them and those who cannot are "similarly situated" – indeed, all law-abiding adults are similarly situated in their worthiness to exercise fundamental rights – but rather whether the factor that is the basis for classifying them differently in their treatment (in this case, a specific threat) survives the appropriate level of judicial review.

And where, as here, a classification affects a fundamental right, the government must meet its burden under the most exacting scrutiny. *Perry Educ.*

25

*Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983)). Aside from two conclusory sentences declaring her policy to be narrowly tailored and compelling, Sheriff Hutchens provides no argument that her policy distinguishing between those who can prove a specific threat against them and those who cannot survives strict scrutiny. Thus, Sheriff Hutchens' policy violates the Equal Protection Clause on its face and as applied to Appellants.

## VII.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR ALTERNATIVE FACIAL CHALLENGE

Plaintiffs recognize that striking a regulation on its face is "strong medicine," and that a party must establish that the challenged law is either "unconstitutional in all of its applications" or in a "substantial number" of its applications to justify such a remedy. *Wash. State Grange v. Wash. State Republican Party*, 522 U.S. 442, 449 & n.6  (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745  (1987)). Plaintiffs are nevertheless likely to prevail under either standard.

Sheriff Hutchens relies on *Richards*, 821 F. Supp. 2d at 1176, claiming that "this Court should not invalidate the 'good cause' portions of Section 26150 or the Policy unless Plaintiffs can 'demonstrate that there are zero circumstances under which [the Sheriff] could clearly issue a concealed weapons permit to someone

26

who demonstrates good cause under the terms of the policy." Appellees' Br. at 48-49. Respectfully, the *Richards* construction of the "void-in-all-applications" standard is nonsensical.

The question is not whether no one could ever meet the heightened "good cause" standard Sheriff Hutchens imposes, rather the Court must consider whether she can ever impose such a standard. Plaintiffs assert that, under no circumstance, is Sheriff Hutchens' policy valid because, under no circumstance, is she permitted to be the final arbiter of what constitutes a "good enough" reason for a law-abiding citizen to exercise the individual right to bear arms for self-defense. Under all circumstances, simply requiring "good cause" is unconstitutional – regardless of whether there is one or there are hundreds that might meet it.

Further, the Sheriff recognizes that a more relaxed standard for facial challenges exists in the First Amendment and abortion contexts whereby a facial challenge will stand when a "substantial number" of the law's applications are invalid (i.e., overbreadth). However, she fails to explain why, if the Second Amendment is to be afforded the same protection as the First as the Supreme Court has directed, *Heller*, 554 U.S. at 634-35, the overbreadth doctrine should not apply to the present case. *See* Appellees' Br. at 48. Plaintiffs assert that it must apply and that, under that standard, Sheriff Hutchens' policy faild on its face.

27

Following the Sheriff's logic, no gun law, even the most extreme, could ever be struck on its face because there will always be at least one person who cannot legally possess firearms and to whom the law would be validly applied. As *Heller* plainly demonstrates, this cannot be. There, even though the Court acknowledged that some individuals could lawfully be denied functional firearms, e.g., convicted felons, it struck down several generally applicable firearm regulations on their face. 554 U.S at 626-27. The Court even recognized that Mr. Heller himself might not be entitled to the necessary handgun permit. *Id*. at 635.Without resort to the overbreadth doctrine, the Court would have had to uphold the law because it recognized that at least one valid application likely exists. Because it did not, it is clear the Court was focused on the laws' invalidity in the "substantial number" of applications. This Court should follow *Heller's* lead.

Sheriff Hutchens is incorrect that the State is a necessary party here. Plaintiffs already served the State with a Notice of Potential Claim of Unconstitutionality pursuant to Federal Rule of Appellate Procedure 44 and 28 U.S.C. § 2403. And, Plaintiffs note that, in the narrow context of Carry License

28

issuance policies and practices, Sheriff Hutchens is a state actor. *See McMillian v. Monroe County*, 520 U.S. 781, 785 (1997).[8]

## VIII. SHERIFF HUTCHENS PROVIDES NO ARGUMENT WHY IRREPARABLE HARM SHOULD NOT BE PRESUMED IF PLAINTIFFS PREVAIL ON THE MERITS

Plaintiffs concede, as they must, that if the Court finds Plaintiffs cannot succeed on the merits of their claims that no irreparable harm has befallen them. But, in that case, Plaintiffs would not be entitled to the relief they seek anyway. But if Plaintiffs prevail on their claims, the district court erred in refusing to presume irreparable harm and improperly denied temporary relief. In that case the harm to Plaintiffs is more than a "possibility." It is the great and immediate violation of a fundamental, constitutional right – a harm that can never be compensated with damages.

## IX. THE BALANCE OF HARMS AND THE FURTHERANCE OF THE PUBLIC INTEREST COMPELS INJUNCTIVE RELIEF

"Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Sammartano v. First Jud. Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002). The fundamental rights expressly protected by the Second Amendment

---

[8] Plaintiffs are happy to provide supplemental briefing on this issue if the Court so desires.

29

deserve no less respect from our governmental actors, and the public has just as a great an interest in preventing their violation. *McDonald*, 130 S. Ct. at 3043-44.

So the potential for impact on the public interest is plainly present here, but not in the manner Sheriff Hutchens claims. It is not some "potential" "risk to public safety," but the *actual*, *grievous* injury to the public-at-large that necessarily arises when the government violates constitutional rights. The ongoing enforcement of the Sheriff's potentially unconstitutional policy infringes not only the self-defense interests of Plaintiffs, but also those of all Orange County residents seeking to exercise their constitutional rights.

The public interest in upholding constitutional principles, though great, has sometimes been found to be overcome by a strong showing of other competing public interests and Plaintiffs do not dispute that the government has an "important interest" in promoting public safety and preventing crime. What they do dispute is that Sheriff Hutchens' policy actually furthers those interests. The Sheriff relies solely on two declarations that merely recite statistics about the misuse of firearms by unlicensed criminals or general concerns about the dangers of firearms.  E.R. II 114-19, 122-25, 173-74. And neither provides the necessary link between the challenged policy and crime reduction, or issuance of Carry Licenses and an increase in crime. *See generally* E.R. II 113-26, 170-74. Sheriff

30

Hutchens has simply not made any showing that injunction would invite any actual harm on the public.

 Date: March 4, 2013                    **MICHEL & ASSOCIATES, P.C.**


                                       s/ C. D. Michel
                                       C. D. Michel
                                       Attorney for Plaintiffs-Appellants

31

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the attached Appellants' Reply Brief complies with Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure. According to the word count feature of the word-processing system used to prepare the brief, it contains 6986 words, exclusive of those matters that may be omitted under Rule 32(a)(7)(B)(iii).

I further certify that the attached brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6). It was prepared in a proportionately spaced typeface using 14-point Times New Roman font in WordPerfect X5.

Date: March 4, 2013                    **MICHEL & ASSOCIATES, P.C.**

                                       s/ C. D. Michel
                                       C. D. Michel
                                       Attorney for Plaintiffs-Appellants

32

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2013, an electronic PDF of

APPELLANTS' REPLY BRIEF was uploaded to the Court's CM/ECF system,

which will automatically generate and send by electronic mail a Notice of Docket

Activity to all registered attorneys participating in the case. Such notice constitutes

service on those registered attorneys.

Date: March 4, 2013                    **MICHEL & ASSOCIATES, P.C.**

                                       s/ C. D. Michel
                                       C. D. Michel
                                       Attorney for Plaintiffs-Appellants